# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

|  |  |
|---|---|
| | Misc. No. 13-58 (JRT) |
| DONALD BEDELLE FULLER, | **ORDER ON PETITION FOR** |
| Petitioner. | **REINSTATEMENT OF ATTORNEY** |

---

Donald Bedelle Fuller, 8400 Normandale Lake Boulevard, Suite 920, Bloomington, MN 55437, petitioner.

Donald Fuller was suspended from the practice of law in Minnesota in 2001 by the Minnesota Supreme Court, and subsequently suspended from the practice of law in the United States District Court for the District of Minnesota as a result of reciprocal automatic suspension. He has sought reinstatement from the Minnesota Supreme Court twice – the first time his petition for reinstatement was denied and the second time he withdrew – so he remains ineligible to practice law in the state of Minnesota. He now petitions the Court for reinstatement to practice in federal court pursuant to Local Rule 83.6(g). Because the Court concludes that none of the circumstances under which the Court may reinstate an attorney subject to suspension in a reciprocal jurisdiction are present, the Court will deny Fuller's petition for reinstatement.

## BACKGROUND

Petitioner Donald Fuller graduated from law school in 1971 and was admitted to practice law in Illinois. After over a decade of practice in Illinois and service in the

Marine Corps, Fuller moved to Minnesota in 1987 and was admitted to the practice of law in Minnesota in 1990.

## I.       BACKGROUND TO STATE COURT DISCIPLINE

In 1995, Fuller prepared a Chapter 11 bankruptcy filing for and represented in bankruptcy proceedings a business called Imprint Technologies, Inc. ("Imprint"), which belonged to his client Brett Hanson. *In re Disciplinary Action Against Fuller*, 621 N.W.2d 460, 462 (Minn. 2001) (per curiam).   After discovering several practices and certain conduct by Hanson, Fuller sent Hanson a letter dated June 3, 1996 stating that he was withdrawing from representing Imprint on all matters and stating that Hanson's refusal to seek chemical dependency treatment was the reason. *Id.* at 463.   Fuller then did not attend a hearing on behalf of Imprint the next day and did not file a motion to withdraw from another action in which he represented Imprint. *Id.* at 463-64.   He later testified that he did not do so because Hanson threatened him and told him not to do anything and that he was afraid of Hanson. *Id.* at 464.   On June 6 and 11, 1996, Fuller wrote letters to the opposing counsel on both matters for which he had represented Imprint, explaining that he had withdrawn from representing Imprint and Hanson because Hanson failed to receive chemical dependency treatment and because he frequently wrote bad checks. *Id.*   Fuller later wrote letters about Hanson to more than twenty-five individuals and government entities, including Al Gore, Janet Reno, the FBI, the IRS, the Minnesota Attorney General's office, the Minnesota Office of Lawyers Professional Responsibility ("OLPR"), judges, and creditors of Imprint. *Id.*   The letters accused

Hanson of, among other things, chemical dependency, fraud, intimidation, and murder. *Id.*

Hanson then filed a disciplinary complaint against Fuller with the OLPR. *Id.* After a hearing on September 5, 1997, the Fourth District Ethics Committee of the Hennepin County Bar Association recommended that the Lawyers Professional Responsibility Board ("LPRB") further investigate both Fuller and Hanson. *Id.* At the suggestion of the OLPR, Fuller submitted to psychological and psychiatric evaluations, both of which determined that Fuller exhibited signs of paranoia. *Id.* at 465; (Aff. of Dulce J. Foster, Exs. 5, 6, Jan. 9, 2014, Docket No. 15.)

In May 1999, the OLPR requested that a panel of the LPRB find that probable cause existed either for public discipline of Fuller or placing him on disability inactive status. *In re Fuller*, 621 N.W.2d at 465. On November 4, 1999, the LPRB panel found probable cause for public discipline (although not for transfer to disability inactive status) and the OLPR filed a petition for disciplinary action on December 2, 1999. *Id.* The petition included two counts: one regarding improper withdrawal from representation, disclosure of client confidences, and failure to disclose an amount of attorneys' fees in violation of Minnesota Rules of Professional Conduct 1.16(c), 1.16(d), 1.5(a), 1.6, 3.3(a), 3.4(c), 4.1, 4.4, 8.4(c), and 8.4(d), and one regarding the submission of false evidence in a disciplinary investigation in violation of Minnesota Rules of Professional Conduct 3.3(a)(4), 3.4(b), 8.1(a), and 8.4(c). *Id.* The Minnesota Supreme Court referred the petition to a referee for a hearing, and the referee recommended that the court suspend

Fuller indefinitely with a one-year minimum for suspension and that the court require Fuller to successfully complete a mental health evaluation.  *Id.*

## II.      MINNESOTA SUPREME COURT'S DISCIPLINARY DECISION

The Minnesota Supreme Court found that the referee did not err in finding that Fuller had violated the Rules of Professional Responsibility in several ways.  First, the court found that Fuller improperly withdrew from representation of Imprint, over Fuller's objections that Hanson ordered him not to take any action to further represent Imprint and that he had a duty to withdraw once he discovered that Hanson was engaging in fraud. *Id.* at 466.  The court found that, despite these alleged orders from Hanson, Fuller was still required to abide by the rule for withdrawal by appearing in court and moving to withdraw.  *Id.*  Second, the court found that the referee did not clearly err in concluding that Fuller improperly revealed client confidences by sending letters accusing Hanson of chemical dependency and fraud to various public officials and government entities.  *Id.* at 466-67.   The court rejected Fuller's arguments that he was required to make the disclosures, both to the bankruptcy court and in order to avoid assisting Hanson with his alleged scheme, finding that the content of his disclosures and the recipients to which he sent them exceeded any proper or required scope of disclosure.  *Id.* at 467-68.  Third, the court found no error in the referee's conclusion that Fuller failed to disclose an attorney's fee arrangement to the bankruptcy court.  *Id.* at 468.[1]  Finally, the court found that the

---

[1] The court declined to adopt the referee's finding that Fuller's fees were unreasonable in violation of Minnesota Rule of Professional Conduct 1.5(a).  *In re Fuller*, 621 N.W.2d at 468.

referee did not err in concluding that Fuller submitted false or falsified evidence in the course of the disciplinary investigation. *Id.* at 469.

On the basis of these findings, the Minnesota Supreme Court ordered on January 25, 2001, that Fuller be suspended from the practice of law in Minnesota indefinitely (although without the one-year minimum suspension as recommended by the referee) and that he be required to submit proof of sound mental health before reinstatement. *Id.* at 470-71. On February 1, 2001, Fuller was automatically suspended from the practice of law before this Court pursuant to then-Local Rule 83.6(b). (Foster Aff., Ex. 1.) The Bankruptcy Court issued an order to show cause, but at the hearing on the order in April 2001, Fuller advised the court that he did not intend to proceed with petitions for reinstatement of his license. (*Id.*, Ex. 2.)

In February 2001, Fuller filed a petition for reinstatement with the Minnesota Supreme Court, which the court denied on February 16, 2001. *In re Disciplinary Action Against Fuller*, 622 N.W.2d 538 (Minn. 2001). The court also ordered that "any future petition for reinstatement shall comply with Rule 18(a)-(d), Rules on Lawyers Professional Responsibility, including the requirement that petitioner go through a reinstatement hearing." *Id.* Eight years later, on February 23, 2009, Fuller again filed a petition for reinstatement to practice law in Minnesota with the OLPR, but he withdrew the petition on April 4, 2009. (Foster Aff., Exs. 11-12.) According to Fuller, he withdrew the petition because he would not be able to receive a fair, unbiased and impartial panel hearing because one of the review panel members was a "self-described radical" and former spouse of a member of the Black Panthers. (Foster Aff., Ex. 12.) He

has not sought reinstatement in Minnesota with the OLPR since the withdrawal of that petition.

## III.    THIS PROCEEDING

On July 29, 2013, Fuller filed this petition with the Court seeking reinstatement. (Pet. for Reinstatement, July 29, 2013, Docket No. 1.)  Fuller seeks "restoration of the federal privileges and of all the duties of practicing law before the District Court and the Bankruptcy Court for the District of Minnesota." (*Id.* at 3.)  Since his suspension, he has maintained an accounting and tax practice with a company called the Tax Resolution Center (*id.* at 2), and it appears that he seeks to supplement those non-legal practices with a legal practice exclusively in bankruptcy and federal district court.  In a section of his petition titled "Justification for Review and Reinstatement," he states:

> The Petitioner took precautionary steps to protect the integrity of this Court and the Chapter 11 proceedings by requiring a participant in a Chapter 11 proceeding who was a Serial Bankruptcy filer and untreated alcoholic to retain individual counsel and to undergo in residence treatment for alcoholism . . . .
>
> Petitioner honestly and reasonably believed that he had a factual basis for not seeking withdrawal from the 1995 Chapter 11 bankruptcy proceedings once he had knowledge of embezzlements to or from the federal bankruptcy court supervised bankruptcy estate since a crime had been committed in the proceedings and the federal officers appeared indifferent to the consequences for such unlawful misconduct.
>
> Petitioner did not seek an award of attorney's fees from the 1995 Chapter 11 bankruptcy estate because Petitioner reasonably believed that the bankruptcy estate contained embezzled or fraudulently obtained funds . . . .

(*Id.* ¶¶ 34, 37-39.)  In attachments to his petition, he further elaborates that he believes the Minnesota Supreme Court's order was in error because it failed to appreciate the

attorney's duties in bankruptcy proceedings to represent the interests of the estate, not any individual (such as Hanson), and because apparently his attorney in the disciplinary proceedings failed to ensure that the OLPR received two affidavits from people with knowledge of Hanson's activities with regard to Imprint.  (*See* Pet. for Reinstatement, Ex. 5 at 1.)  His petition includes several other attachments, several of which are intended to demonstrate his moral character and fitness.  (*See, e.g.*, *id.*, Exs. 2, 4.)

The Court held a hearing on Fuller's petition on January 15, 2014.  Dulce J. Foster appeared as Special Counsel for the Court.  Pursuant to her appointment as Special Counsel, (Order, Oct. 17, 2013, Docket No. 3), Ms. Foster prepared and filed with the Court a Special Counsel's Report, dated January 9, 2014.  On the basis of both Fuller's petition and accompanying documents and the Special Counsel's Report, the Court concludes that reinstatement is not warranted and will deny Fuller's petition.

## ANALYSIS

## I.    REINSTATEMENT UNDER THE LOCAL RULES

"Although federal courts have traditionally used admission to the bar of a state court as a standard for initial admission to their bars, admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges."  *Surrick v. Killion*, 449 F.3d 520, 529 (3d Cir. 2006) (citing *Theard v. United States*, 354 U.S. 278, 281 (1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included." (alteration in original))).  The

United States Supreme Court "has repeatedly emphasized . . . that disqualification from membership from a state bar does not necessarily lead to disqualification from a federal bar." *Frazier v. Heebe*, 482 U.S. 641, 647 n.7 (1987); *see Theard*, 354 U.S. at 282 ("[D]isbarment by federal courts does not automatically flow from disbarment by state courts."); *Selling v. Radford*, 243 U.S. 46, 49 (1917).   Thus, the Court is not bound by the Minnesota Supreme Court's refusal to reinstate Fuller to practice law in Minnesota and will undertake its own inquiry as to whether reinstatement to practice in the United States District Court for the District of Minnesota is appropriate.

The standard governing this inquiry is in this case complicated for two reasons. First, since Fuller filed his petition in July 2013, one of the applicable Local Rules has been amended.  Specifically, Rule 83.6(b)'s detail regarding the process for petitioning to be excused from reciprocal discipline after having been disciplined by another court has been simplified and the substantive standard by which such a petition should be judged has been removed.  The prior version of the rules required an attorney to, "upon being subjected to public discipline by any other court of the United States or the District of Columbia, or by a court of any state . . . promptly inform the Clerk of this Court of such action," and provided that

> [u]nless otherwise ordered by this Court, any such attorney who has been temporarily or permanently prohibited from practicing law by order of any other court, whether by suspension, revocation, or disbarment, shall automatically forfeit his or her right to practice law before this Court during the same period that such attorney has been prohibited from practicing law by such other court.

D. Minn. LR 83.6(b)(1) (2013).   The rule provided that an attorney prohibited from practicing law by another court could "petition this Court seeking relief from the automatic forfeiture provision."   *Id.* 83.6(b)(2).   The rule instructed that such relief

> shall not be granted unless the petitioning attorney has demonstrated, or this Court finds, that on the face of the record upon which the discipline by another court is predicated it clearly appears:
>
> (A)   that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (B)   that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (C)   that the imposition of the same discipline by this Court would result in grave injustice; or
>
> (D)   that the misconduct established is deemed by this Court to warrant substantially different discipline.

*Id.* 83.6(b)(4).   The new version of the rules contains a much simpler provision regarding reciprocal discipline.   It states that "[u]nless the court orders otherwise, an attorney who has been temporarily or permanently prohibited from practicing before any other court or jurisdiction automatically forfeits the right to practice before this court for the same period."   D. Minn. LR 83.6(d)(1) (2014).   The commentary accompanying the amendment explains that "[t]he revised rule carries forward many of the former rule's provisions, now reorganized and clarified" and "specifies the rights of an attorney who is the subject of court-initiated disciplinary proceedings or who seeks reinstatement to the court's bar."   D. Minn. LR 83.6, 2014 Advisory Committee's Note.   The four-part substantive standard for avoiding reciprocal discipline does not appear in the new version of the rule; and although the new version appears to preserve the possibility of reprieve

from automatic discipline, *see* D. Minn. LR 83.6(d)(1) (2014) ("Unless the court orders otherwise . . . ."), it does not specify the procedure for seeking such relief.

Second, even under the rules in effect when Fuller filed his petition – which included the greater detail about reciprocal discipline – it was not entirely clear which set of standards applied to this situation, where an attorney disbarred by this Court on account of reciprocal discipline with the Minnesota Supreme Court petitions for reinstatement after the reciprocal court has denied reinstatement.  Rule 83.6(b) governed petitions to **avoid** reciprocal discipline after having been disciplined by another court, and 83.6(g) governed reinstatement after disbarment or suspension by this Court for whatever reason.  *Compare* D. Minn. LR 83.6(b) (2013), *with* D. Minn. LR 83.6(g) (2013).  But there was not a provision specifically addressing this situation, involving an attorney's petition for reinstatement where the attorney had not first sought or successfully attained reinstatement in state court.

Thus, if the Court applies the current, newly amended rules, the Court would inquire only whether Fuller has shown by clear and convincing evidence that he (a) "has the moral qualifications, competence, and learning in the law required for admission to the court's bar," (b) "has satisfied all conditions required for reinstatement to the court's bar;" and (c) his "resumption of the practice of law will not damage the integrity of the court's bar, the administration of justice, or the public interest."  D. Minn. LR 83.6(g)(3) (2014).  If the Court applies the rules in effect when Fuller filed his petition, the Court could judge his petition by the standard for reviewing a reinstatement petition, which were substantively similar as in the current rules, *compare* D. Minn. LR 83.6(g)(3)

(2013), *with* D. Minn. LR 83.6(g)(3) (2014),[2] or by the standard for reviewing a petition seeking to avoid automatic forfeiture upon disbarment or suspension by another court.

Which version of the rules applies, and which substantive standard to apply are potentially complex questions that the Court need not resolve here because, applying either standard, the Court would deny Fuller's petition.

## II.   FULLER'S PETITION

Fuller's primary arguments in support of his reinstatement include that his actions with regard to Hanson were required and part of the special duties imposed on attorneys before bankruptcy court, that he honestly and reasonably believed that he had a factual basis for not seeking proper withdrawal from the 1995 bankruptcy proceedings, and that he did not seek an award of bankruptcy attorney's fees.  (*See* Petit. for Reinstatement at 11-12, ¶¶ 34-38 (section titled "Justification for Review and Reinstatement").)  He argues that:

> The continued imposition of suspension by this Court would result in a grave injustice and continue to permit the federal bar to believe, perhaps, that those who accurately report federal bankruptcy fraud may be

---

[2] Both versions of the rules require that the petitioner establish by clear and convincing evidence that "the petitioner has the moral qualifications, competence, and learning in the law required for admission to the court's bar," and each contains a substantially similar additional requirement, that "the petitioner's resumption of the practice of law will not damage the integrity of the court's bar, the administration of justice, or the public interest," (2014), or that the petitioner's "resumption of the practice of law will not be detrimental to the integrity and standing of the bar, or to the administration of justice, or subversive to the public interest," (2013).  D. Minn. LR 83.6(g)(3)(A), (C) (2014); D. Minn. LR 83.6(g)(3) (2013).  The new version also requires that the petitioner show by clear and convincing evidence that "the petitioner has satisfied all conditions required for reinstatement to the court's bar."  D. Minn. LR 83.6(g)(3)(B) (2014).  It is not clear if or how this additional requirement substantively alters the prior standard, but the Court determines that it is not dispositive in this case such that it need not address this difference further.

> disciplined by the State of Minnesota Supreme Court and that those federal
> bankruptcy attorneys who cover-up bankruptcy fraud get to retain their
> Minnesota license to practice law, their privilege of appearing in the United
> States Bankruptcy Court, and that it is worth the risk of non-reporting if the
> attorney can obtain and not have to disgorge ill gotten attorneys fees.

(*Id.* ¶ 39.)  His petition also includes twenty-four exhibits in support of his petition, a

"Summary of Process," an "Executive Summary," and a copy of the Minnesota Supreme

Court's 2001 decision suspending his license to practice.  (*See* Pet. for Reinstatement,

Exs. 2-5.)  Fuller has also filed several other documents and accompanying exhibits,

including a Notice of Proceeding in Good Faith, an Affidavit of Flaws in State Process,

an Affidavit of Sacred Duty, an Affidavit Concerning Fixing Things, and a Final

Affidavit.  (*See* Docket Nos. 6-11, 18, 19.)  In these filings he additionally argues, among

other things, that his disciplinary proceedings before the Minnesota Supreme Court

lacked due process because of systemic favoritism toward attorneys who are chemically

dependent, (Notice of Proceeding in Good Faith at 1-2, Dec. 10, 2013, Docket No. 6),

that attorneys who practice in federal court (including bankruptcy) should be licensed and

governed by a federal, rather than state, system, (*id.* at 5-12), and that the handling of his

disciplinary proceedings by Hanson's counsel and his appointed counsel was flawed in a

variety of ways, (*see, e.g.*, Confidential Aff. ¶ 23, Dec. 10, 2013, Docket No. 7).

Elsewhere he also argues that discipline is not warranted because he was merely making

disclosures which are specifically and uniquely required in bankruptcy court, which he

argues the state court failed to take into account.  (Pet. for Reinstatement at 1, 3.)  None

of these arguments or his evidence in support of them meets either set of standards under

which the Court could reinstate Fuller's license to practice in this Court.

**A.      Standard for Avoiding Reciprocal Discipline Based on Discipline by Another Court**

The rules in effect when Fuller filed this petition instruct that a court may grant a petition for relief from automatic reciprocal discipline when the record clearly demonstrates (a) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process, (b) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject, (c) that the imposition of the same discipline by this Court would result in grave injustice, or (d) that the misconduct established is deemed by this Court to warrant substantially different discipline. D. Minn. LR 83.6(b)(4)(2013). None of these are present here.

First, his arguments regarding the inadequacies of the state court proceedings do not establish that the procedure was lacking in notice or opportunity to be heard, *see* D. Minn. LR 83.6(b)(4)(A) (2013): he has provided insufficient evidence of any bias against him or systemic favoritism toward attorneys who are chemically dependent or that any counsel's conduct during the proceedings was improper. Furthermore, the Minnesota Supreme Court's written opinion indicates that Fuller had plenty of opportunity to participate and be heard during the process, including the opportunity to submit evidence, participate in evaluations, participate in a hearing, and appeal from the referee's conclusions.

Second, Fuller has not provided evidence giving rise to a "clear conviction" that his suspension (and the Minnesota Supreme Court's denial of his petition for

reinstatement) lacked proof establishing his misconduct.  D. Minn. LR 83.6(b)(4)(B) (2013).  In this proceeding, he does not really contest the accuracy of the accounts of his conduct, but rather generally argues that his conduct was justified.  There is adequate proof in the record before the Court, including the record that was before the Minnesota Supreme Court, such that the Court concludes that Fuller has not clearly established that his discipline lacked proof.

Third, Fuller has not demonstrated that it would "result in a grave injustice" for this Court to deny his petition for reinstatement.  D. Minn. LR 83.6(b)(4)(C) (2013).  Although Fuller appears to have made the disclosures regarding Hanson and to have withdrawn from his representation in good faith – insisting still that those actions were pursuant to his ethical duties to the bankruptcy court – the disclosures exceeded the scope permitted by the Minnesota Rules of Professional Conduct and he was not permitted to withdraw without complying with the applicable notice requirements.  *See* Minn. R. Prof. Conduct 1.6(b) (permitting a lawyer to "reveal information relating to the representation of a client" under certain circumstances); Minn. R. Prof. Conduct 1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.").  To the extent that Fuller argues that he is not bound by the disclosure rule because Hanson was not his client, the record indicates that Hanson had once been a client and the duty of confidentiality continues after representation ends.  *See* Minn. R. Prof. Conduct 1.6, Cmt. 14 ("After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise permitted in Rule 1.6.").

Fourth, Fuller does not argue and the Court does not find that the misconduct the Minnesota Supreme Court found him to have committed "warrant[s] substantially different discipline." D. Minn. LR 83.6(b)(4)(D) (2013). The Minnesota Supreme Court rejected the referee's recommendation of instituting a minimum term of suspension and left open the possibility for reinstatement upon a showing that "the problem that led to his misconduct has been treated such that it no longer interferes with his ability to practice law." *In re Fuller*, 621 N.W.2d at 470. Fuller has not established that substantially different discipline is warranted.

Thus, under the standard governing relief from automatic forfeiture based on reciprocal discipline, the Court concludes that Fuller has not established that the Court should, at this time and based on the record accompanying his petition, depart from the Minnesota Supreme Court's determination that he should not be reinstated.

### B.       Standard for Reinstatement of Disbarred or Suspended Attorney

The rules currently in effect governing review of a petition for reinstatement instruct that, in order to be reinstated, the petitioner must establish by clear and convincing evidence that:

> (A) the petitioner has the moral qualifications, competence, and learning in the law required for admission to the court's bar, (B) the petitioner has satisfied all conditions required for reinstatement to the court's bar; and (C) the petitioner's resumption of the practice of law will not damage the integrity of the court's bar, the administration of justice, or the public interest.

D. Minn. LR 83.6(g)(3) (2014).

The Court need not reach all three of these elements because it concludes that Fuller has not established the first requirement – that he has the "moral qualifications, competence, and learning in the law required for admission to the court's bar" – by clear and convincing evidence. *See* D. Minn. LR 83.6(g)(3)(A) (2014). The Second Circuit has observed that admission to the state's bar can serve as an indicia of this requirement, and that when an attorney has been "prohibited from practicing law for several years, the need to meet these initial admission criteria is especially strong." *In re Kandekore*, 460 F.3d 276, 280 (2d Cir. 2006). Although Fuller has certainly demonstrated his personal loyalty and commitment to what he understands to be the ethical practice of law, the fact that he has not yet submitted any proof that "the problem that led to his misconduct has been treated such that it no longer interferes with his ability to practice law," *In re Fuller*, 621 N.W.2d at 470, as the Minnesota Supreme Court required before he could be reinstated, leads the Court to conclude that he has not demonstrated this basic requirement.

As a final note, many of Fuller's filings indicate that his primary concern with this petition is not his reinstatement, but more generally with the practice of federal courts relying on state court judgments of fitness to practice law, and particularly the extent to which those judgments are biased in favor of attorneys with chemical dependency issues. He explains:

> I reasonably believe that the proceedings in this matter 13-58 (JT) are not, in my opinion, about whether I may be re-instated to practice as a federal officer of the court; but rather, in my opinion, whether our federal system of justice can assure to each and every federal litigant . . . that the delivery of federal justice is not impaired, in any manner, by the consequences of

any federal officer[]s of the court substance abuse or chemical[] dependency.

(Confidential Aff. ¶ 12.)   Although "high respect is given to the judgment of the state court in its disbarment proceedings," *In re Caranchini*, 160 F.3d 420, 424 (8th Cir. 1998) (internal quotations omitted), federal courts are not bound by the disciplinary proceedings of state courts.   *See, e.g.*, *id.* (observing that federal courts may engage in "narrow review of state court findings"); *Theard*, 354 U.S. at 282.   Thus, Fuller's concern, although seemingly well-intentioned and based out of a deep respect for federal courts, is already addressed by the law governing federal review of state court disciplinary proceedings, which permits federal courts to depart from a state court's findings in certain circumstances.   Here, however, the Court has concluded that no such departure is warranted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Donald Bedelle Fuller's Petition for Reinstatement [Docket No. 1] is **DENIED**.

DATED:  September 3, 2014
at Minneapolis, Minnesota.

                                s/ John R. Tunheim
                                  JOHN R. TUNHEIM
                            United States District Judge